# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| KRISTY TOVAR, ) | |
| ) | Bankruptcy No. 12-00357 |
| Debtor. ) | |
| ) | |
| IN RE: ) | |
| ) | Bankruptcy No. 12-00358 |
| GZIM LIMANI, ) | |
| ) | |
| Debtor. ) | |

## RULING ON MOTIONS FOR RELIEF FROM STAY AND REMAND

These matters came before the Court on Miguel Antonio's Motions to Lift Stay and Remand to State Court. Mr. Antonio filed identical motions in both of the above-captioned actions against Mr. Limani and Ms. Tovar (collectively "the Debtors"). Because the actions involve the same set of facts and legal arguments, the matters will be ruled on collectively. A hearing on the Motions was held on May 11, 2012. Attorney Peter Cannon appeared on behalf of Mr. Antonio and Attorney Erek Sittig appeared on behalf of the Debtors. After hearing the parties' arguments, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## STATEMENT OF THE CASE

Mr. Antonio has an action pending in state court against both Debtors. Mr. Antonio is listed as an unsecured creditor on both Debtors' bankruptcy filings. Mr.

Antonio has filed two separate adversary complaints—one adversary against each Debtor—seeking to deny dischargeability of his claims against the Debtors. Mr. Antonio asserts that his claims are non-dischargeable under 11 U.S.C. § 523(a)(6).

Mr. Antonio now seeks relief from the automatic stay to pursue his state court action against Debtors. Mr. Antonio further requests that the Court "remand" these matters to state court for determination. Debtors object. Because Mr. Antonio has shown sufficient cause exists to grant relief from the stay, those motions are granted. Mr. Antonio's Motions to Remand, however, are denied. There is nothing to remand to state court. The adversaries were filed in this Court. Remand would be improper for several reasons including that this Court, not the state court, is the proper place to determine whether a debt may be discharged in bankruptcy. The adversaries will be stayed pending the outcome of the state court actions.

## BACKGROUND

Kristy Tovar and Gzim Limani filed separate Chapter 7 bankruptcy actions on March 2, 2012. These filings stayed state court litigation between Mr. Antonio and Debtors that was eleven (11) days from trial. Mr. Antonio was listed on Schedule E of both Debtors' filings as a creditor holding an unsecured priority claim. The amount of the claims was listed as unknown.

On April 19, 2012, Mr. Antonio filed two separate adversaries—one in each case—arguing his claims were non-dischargeable under 11 U.S.C. § 523(a)(6). Mr. Antonio's unliquidated claim is the state court lawsuit. He argues, in the adversaries, that Debtors' conduct was willful and malicious under § 523(a)(6) and the debt should not be discharged.

Mr. Antonio's state court matter is a three count petition. It alleges the defendants were the owners and managers of Tower Family Restaurant d/b/a King Tower Café. Mr. Antonio alleges that he was employed by the defendants as a cook between February 2004 and August 2009. He claims the defendants willfully failed to compensate him at the minimum wage rate required by the Iowa Minimum Wage law (Iowa Code 91D.1) and the Fair Labor Standards Act (29 U.S.C. § 201), and failed to compensate him for workweeks longer than forty hours at a rate not less than one and one-half times the minimum wage, in violation of the Fair Labor Standards Act (29 U.S.C. § 201). Mr. Antonio requested a trial by jury as to each of the claims. The state court matter was automatically stayed as a result of the bankruptcy filing. Mr. Antonio now seeks relief from the stay in order to proceed in state court to attempt to recover the alleged unpaid wages.

## THE PARTIES' ARGUMENTS

Mr. Antonio requests this Court lift the automatic stay and "remand" a portion of his claims to the Iowa District Court. Mr. Antonio admits that the

determination of the dischargeability of his claim is a core proceeding under 28 U.S.C. § 157(b)(2)(j), but argues the state law damages claims are not core proceedings.  Mr. Antonio argues that under the factors in <u>Transamerica Financial Life Ins. Co. v. Merrill Lynch & Co.</u>, 302 B.R. 620, 629–30 (N.D. Iowa 2003), the state law damage claims are not core proceedings and should be heard by the state court.  Mr. Antonio argues: "The narrow issues of willfulness and malicious standards under 11 U.S.C. 523(a)(6) can be determined under collateral estoppel principles in a short Bankruptcy Court hearing only if Antonio wins in State Court."  (Mt., ECF Doc. No. 9, at ¶ 9.)

In resistance, Debtors argue that judicial economy dictates that this Court should first determine whether Antonio's claim is non-dischargeable before lifting the stay to allow the state court matter to move forward.  Debtors also argue that the "Bankruptcy Court has exclusive jurisdiction to determine the non-dischargeability under Section 523(a)(6)."  Debtors argue Mr. Antonio has failed to cite any authority to support his proposition that the automatic stay should be lifted or the state court matter should be heard prior to determining the dischargeability of Mr. Antonio's claim.

Mr. Antonio replies arguing that since the validity and amount of his claims are not core proceedings, he does not "seek an abstention or remand to State Court of the ultimate dischargeability issue, only the issues of liability and the amount of

damages." (Antonio Reply, ECF Doc. No. 16, at ¶ 3.) Mr. Antonio argues specifically:

> 9. The main factor which Antonio urges supports a limited equitable remand is judicial economy. If the case is allowed to stay completely in a bankruptcy court, this court would try liability, damages and dischargeability. If the case is tried in State Court first, then only dischargeability will be tried in Bankruptcy Court and most likely on a collateral estoppel basis, like Jasper v. Hussain. Further if Antonio loses the State Court case no proceeding would be necessary at all.
> 10. In many cases a two-step process is duplicative and doesn't save time or money, here it will. Both State Court counsel for the Debtor and Antonio are not familiar with bankruptcy rules and procedures and new counsel will need to be obtained and brought up to speed on the underlying cases or both bankruptcy counsel and State Court counsel must try the case, an unnecessary expense for the clients is avoided . . . .
> 11. After the claim is liquidated in State Court, the parties will return to either dismiss the case or file respective motions for summary judgment; a much more expeditious handling of the Dischargeability Complaint.

(Id. at ¶¶ 9–11.)

## CONCLUSIONS OF LAW AND DISCUSSION

**A. Relief from Stay**

Mr. Antonio requests that the automatic stay be lifted so that his state court actions against the Debtors may proceed. "The Bankruptcy Code provides that '[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay' if the party in interest has made the appropriate showing to obtain such relief." Miller v. Deutsche Bank National Trust Co. (In re Miller), 666 F.3d 1255, 1260–61 (10th Cir. 2012) (quoting 11 U.S.C. § 362(d)).

5

Subsection one (1) of § 362 applies in this action: "the court shall grant relief from the stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(d)(1).

Debtors do not argue that Mr. Antonio is not a party in interest, thus the first requirement is satisfied.  The Court is, however, faced with the question of whether Mr. Antonio has presented "cause" for relief from stay.

> Although Congress did not define cause, it intended that the automatic stay could be lifted to allow litigation involving the debtor to continue in a nonbankruptcy forum under certain circumstances. H.R. Rep No. 95–595, at 341 (1977); S. Rep. No. 95–989, at 50 (1978) ("It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere."); see In re United Imports, Inc., 203 B.R. 162, 166 (Bankr. D. Neb. 1996).
>
> In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the Debtor to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court. Internal Revenue Service v. Robinson (In re Robinson ), 169 B.R. 356, 359 (E.D. Va. 1994); United Imports, 203 B.R. at 166; In re Marvin Johnson's Auto Service, Inc., 192 B.R. 1008, 1014 (Bankr. N.D. Ala. 1996); Smith v. Tricare Rehabilitation Systems, Inc. (In re Tricare Rehabilitation Systems, Inc.), 181 B.R. 569, 572–73 (Bankr. N.D. Ala. 1994). The factors used to balance the hardships are well established and include: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors. See United Imports, 203 B.R. at 167; In re Johnson, 115 B.R. 634, 636 (Bankr. D. Minn. 1989); In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984); see also e.g., Sonnax Indus, Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),

907 F.2d 1280, 1286 (2d Cir. 1990); Marvin Johnson's, 192 B.R. at 1014; Tricare, 181 B.R. at 573–74.

Blan v. Nachogdoches County Hospital (In re Blan), 237 B.R. 739–40 (B.A.P. 8th Cir. 1999).

The Blan test has been endorsed and applied in subsequent cases by the Eighth Circuit Bankruptcy Appellate Panel, this Court, and other bankruptcy courts in this Circuit. See e.g., Bergman v. Wintroub (In re Wintroub), 283 B.R. 743, 745 (B.A.P. 8th Cir. 2002) ("The bankruptcy court properly applied the Blan test . . . ."); In re Schaefer, Bankr. No. 03-04001, 2004 WL 2714380, at *2–3 (Bankr. N.D. Iowa 2004) (applying the Blan test); In re Daake, Bankr. No. 11-42063, 2011 WL 4889242, at *1–2 (Bankr. D. Neb. 2011) (weighing Blan factors when deciding whether cause exists to lift stay). Four out of five Blan factors support lifting the stay in this case.

### 1. Judicial Economy

The first factor strongly weighs in Mr. Antonio's favor. The interests of judicial economy and the expeditious and economical determination of litigation is served by lifting the stay. Mr. Antonio has requested that his claims be heard by a jury. The state court already set the matter for a jury trial. Allowing the jury trial to proceed in state court will "'relieve the bankruptcy court of duties that may be handled elsewhere,'" In re United Imports, Inc., 203 B.R. 162, 166 (Bankr. D. Neb. 1996) (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 5836, 6297).  By lifting the stay and allowing the state court matter to proceed, a jury will determine whether Debtors willfully injured Mr. Antonio.  That issue of "willful injury" is central to the adversaries Mr. Antonio filed in this Court.

Section 523(a)(6) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for **willful** and **malicious injury** by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (emphasis added).  Mr. Antonio argues that the wages he is owed were withheld willfully and maliciously by Debtors and consequently, those amounts are non-dischargeable.

The willful and malicious determination will be made in the state court case on Mr. Antonio's claim for punitive damages.  Iowa Code § 668A.1 "Punitive or exemplary damages," provides:

1. In a trial of a claim involving the request for punitive or exemplary damages, the court shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating all of the following:
    a. Whether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted **willful and wanton** disregard for the rights or safety of another.
    b. Whether the conduct of the defendant was directed specifically at the claimant, or at the person from which the claimant's claim is derived.

Iowa Code § 668A.1 (emphasis added). While § 668A.1 requires a "willful and wanton" standard Iowa courts have held that to make this showing, malice must be proven. "Actual malice is characterized by such factors as personal spite, hatred, or ill will. Schultz v. Sec. Nat'l Bank, 583 N.W.2d 886, 888 (Iowa 1998). Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights. Id. Monona County Mut. Ins. Ass'n v. Hoffman Agency, Inc., No. 10-0136, 2010 WL 4867366, at *11 (Iowa Ct. App. Nov. 24, 2010).

> In order for the court to award punitive damages for Rollie's trespass, the Stoeckers had the burden of proving by a preponderance of clear, convincing, and satisfactory evidence that Rollie acted with willful or wanton disregard of their rights. Iowa Code § 668A.1(a) (2003). Punitive damages are only justified if Rollie's acts were malicious. Crawley v. Price, 692 N.W.2d 44, 50 (Iowa Ct. App. 2004) (citation omitted). Malice may be actual (expressed) or legal (implied); legal malice occurs when a defendant acts illegally or improperly with a reckless disregard for the rights of others. Id.

Stoecker v. Stephens, No. 05-0572, 2006 WL 133243, at *3 (Iowa Ct. App. Jan. 19, 2006). "Punitive damages are justified when the acts of the defendant are malicious." Condon Auto Sales & Serv., Inc. v. Crick, 604 N.W.2d 587, 594 (Iowa 1999) (citing Beeck v. Aquaslide 'N' Dive Corp., 350 N.W.2d 149, 167 (Iowa 1984)); see Crawley v. Price, 692 N.W.2d 44, 50 (Iowa Ct. App. 2004).

> The Iowa Supreme Court has defined "willful and wanton" as meaning that: "the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is

9

> usually accompanied by a conscious indifference to the consequences." Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 395 (Iowa 2001) (citations omitted). Moreover, a plaintiff seeking to establish that conduct was willful and wanton must demonstrate that the defendant's conduct constituted actual or legal malice. Id. at 396. "Actual malice is characterized by such factors as personal spite, hatred, or ill will," which "[l]egal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." Id. (citations omitted). Under these standards, a plaintiff seeking punitive damages must demonstrate something more than negligence on the part of the defendant. Id.

Buhmeyer v. Case New Holland, Inc., 446 F. Supp. 2d 1035, 1047 (S.D. Iowa 2006).

The jury determination on the question of willful and malicious could foreclose the issue from being further litigated in this Court under principles of collateral estoppel.

> When a court has already "decided an issue of fact or law necessary to its judgment, the same issue cannot be relitigated in later proceedings." Winnebago Indus. v. Haverly, 727 N.W.2d 567, 571–72 (Iowa 2006). Under Iowa law, the doctrine of collateral estoppel prevents relitigation if:
>
> (1) the issue determined in the prior action is identical to the present issue;
>
> (2) the issue was raised and litigated in the prior action;
>
> (3) the issue was material and relevant to the disposition in the prior action; and
>
> (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

> Id. at 572. This principle of collateral estoppel applies in bankruptcy dischargeability proceedings. See Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999). Federal courts apply the law of the forum under which the prior judgment was entered when determining whether collateral estoppel arises from a prior state court judgment. Osborne v. Stage (In re Stage), 321 B.R. 486, 492 (B.A.P. 8th Cir. 2005). A bankruptcy court can "properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action." Grogan v. Garner, 498 U.S. 279, 284 (1991) (citing Restatement (Second) of Judgments § 27 (1982)).

Jasper v. Hussain (In re Hussain), Bankr. No. 10-1125, Adv. No. 10-30090, 2012 WL 1098277, at *1–2 (Bankr. S.D. Iowa 2012).

> A creditor in bankruptcy may establish the elements of a § 523 claim through issue preclusion after litigation in state court. Grogan v. Garner, 498 U.S. 279 (1991).  Four elements must be present to apply issue preclusion:
>
>   1. The issue sought to be precluded must be the same as that involved in the prior action;
>
>   2. The issue must have been litigated in the prior action;
>
>   3. The issue must have been determined by a valid and final judgment; and
>
>   4. The determination must have been essential to the prior judgment.
>
> Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane), 124 F.3d 978, 983 (8th Cir. 1997).

Schmidt v. Bauer (In re Bauer), Bankr. No. 05-01781F, Adv. No. 05-9110F, 2006 WL 1582207, at *3–4 (Bankr. N.D. Iowa May 22, 2006).

11

Moreover, if a jury finds in Debtors' favor on the wage claim itself, the adversaries may very well be dismissed, as Mr. Antonio would not be a creditor. The same holds true if a jury finds in Mr. Antonio's favor, but awards no damages. If, however, a jury finds that Debtors are liable and that Mr. Antonio is entitled to damages, those findings will be relevant to the adversaries pending in this Court. This Court will then determine whether the requirements of issue preclusion are met, thus potentially eliminating the need for a trial in this Court. The Court believes that judicial economy is best served by staying the current adversaries to allow for a jury determination in state court as to the issues of liability and damages.

### 2. Trial Readiness

The second factor also weighs strongly in Mr. Antonio's favor. These bankruptcies were filed only eleven (11) days before the state court trial. Counsel was prepared to try the matter. The matter is ready to go back on the state court trial calendar. As the parties were ready for trial when the bankruptcies were filed, this factors strongly weighs in favor of lifting the stay.

### 3. The Resolution of Preliminary Bankruptcy Issues

The third factor weighs in Mr. Antonio's favor because a determination in the state court matter will reveal whether Mr. Antonio is, in fact, an unsecured

creditor in the actions. This would dispose of this preliminary bankruptcy question.

### 4. The Creditor's Chance of Success on the Merits

Mr. Antonio's chances of success on the merits are unclear on the record provided. This factor is neutral.

### 5. The Cost of Defense or Other Potential Burdens to the Bankruptcy Estate and the Impact of the Litigation on Other Creditors

The fifth factor also weighs in Mr. Antonio's favor. If the Court does not lift the stay, additional attorneys' fees will be expended for counsel to prepare to try similar issues in this forum and/or new counsel will have to be obtained. Stated another way, lifting the stay may also save on costs and fees. Also, litigation in another forum will not prejudice the interests of other creditors or interested parties. No other creditors have objected and there is nothing in the record suggesting any such prejudice. This factor weighs in favor of lifting the stay.

The Court thus finds the majority of the Blan factors weigh in favor of granting Mr. Antonio's Motion for Relief from Stay. The stay is lifted and Mr. Antonio's state court matter against Debtors may proceed.

### B. Remand

In addition to lifting the stay, Mr. Antonio also requests that the matter be remanded to state court for a determination of liability and damages. The Court

does not believe that "remand" is necessary or appropriate. There is nothing removed from state court that requires a removal. The state court trial may simply proceed once the stay is lifted.

**WHEREFORE**, Mr. Antonio's Motions for Relief from Stay are **GRANTED**. The stays as they relate to Mr. Antonio's claims in Action # 12-00357 and Action # 12-00358 are lifted. Mr. Antonio may obtain judgment for money due, but may not obtain any lien against property of the bankruptcy estate or the Debtors absent further order of the bankruptcy court. Also, he may not make any attempt to levy or to execute upon the judgment absent permission of the bankruptcy court.

**FURTHER**, Mr. Antonio's request that his Complaint to deny discharge under § 523(a)(6) be remanded to State Court is **DENIED**. The adversaries Mr. Antonio filed seeking to deny discharge, Action # 12-09036 (Antonio v. Limani), and Action # 12-09037 (Antonio v. Tovar), are **STAYED** pending resolution of the state court matters.

Dated and Entered:

October 10, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE